UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VESTED BUSINESS BROKERS, LTD,

                                    Plaintiff,

        -against-                                          **MEMORANDUM AND ORDER**
                                                           16-CV-4945 (JMA)(SIL)
COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, DETECTIVE
THOMAS GABRIELE (Shield # 1203),
RICHARD DORMER, ALEXANDER J. CARO,
KIERAN RODGERS, BRIDGE BUSINESS &
PROPERTY BROKERS, INC., JOSEPH
HOLSTEIN, ZYGMUND MARSZALEK,
ARROW SECURITY, INC., JOHN AND JANE
DOES 1-10

                                    Defendants.
-----------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

        Presently before the Court are three motions to dismiss Plaintiff Vested

Business Brokers, LTD's ("VBB" or "Plaintiff") Complaint ("Compl.") filed by:

(1) Defendants Alexander J. Caro ("Caro"), Bridge Business & Property Brokers, Inc.

("Bridge"), and Arrow Security, Inc. ("Arrow"); (2) Zygmund Marszalek ("Marszalek")

(collectively "Private Defendants"); and (3) the County of Suffolk ("Suffolk County"),

the Suffolk County Police Department ("SCPD"), Detective Thomas Gabriele ("Det.

Gabriele"), and Richard Dormer ("Dormer") (collectively "County Defendants").[1] *See*

_____

[1] *Pro se* Defendant Joseph Holstein interposed an Answer, *see* DE [23], but did not file a motion to
dismiss. Defendant Kieran Rodgers has failed to respond or otherwise appear in this matter.
Nevertheless, because the federal law claims that establish subject matter jurisdiction are dismissed
for the reasons set forth below, and the Court declines to exercise supplemental jurisdiction over the
state law claims against Holstein and Rodgers, their failure to file a motion to dismiss does not save
any of Plaintiff's claims in this Court.

motion to dismiss ("Caro Motion"), Docket Entry ("DE") [31]; motion to dismiss ("Marszalek Motion"), DE [34], motion to dismiss ("County Motion"), DE [38]; *see also* Compl., DE [1]. On April 14, 2017, Judge Azrack referred these motions to this Court for a Report and Recommendation as to whether they should be granted. *See* DE [41]. On April 26, 2017, pursuant to 28 U.S.C. § 636(c), the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, indicating their intention to have this Court "conduct all proceedings and order the entry of a final judgment" on the motions, which Judge Azrack So Ordered on the same date. *See* DE [41, 42]. For the reasons set forth herein, the motions to dismiss are granted in their entirety with prejudice.

## I.   STATEMENT OF RELEVANT FACTS

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendants' motions.

The gravamen of Plaintiff's claims are that, due to a conspiracy amongst the Private and County Defendants, the County Defendants failed to properly investigate and prosecute the Private Defendants for crimes committed against VBB. *See* Compl. ¶ 43. VBB is a web-based business designed to allow independent contractor-brokers to arrange the purchase and sale of other businesses. *See id.* ¶¶ 8, 21. Plaintiff allegedly created a proprietary system called "Broker Net" which contains more than 225,000 pre-qualified, registered business buyers as well as the financial details of approximately 12,000 businesses for sale. *Id.* ¶ 21. In order to safeguard financial details, VBB requires all of its employees

and independent brokers to execute non-disclosure and restrictive covenant agreements prior to receiving a password to enter the Broker Net system.  *Id.* ¶ 24.

On or about January 16, 2004, VBB and Defendant Kieran Rodgers ("Rodgers") entered into an employment agreement and executed a non-disclosure and restrictive covenant agreement.  *Id.* ¶ 25.  Around the same time, Defendant Caro founded Bridge Business and Property Brokers, Inc. and "decided to build Bridge's business by stealing confidential information, including business listings, training information and other processes and procedures, and listing pitches and sales techniques from VBB."  *Id.* ¶ 27.  To that end, in 2006, Caro approached Rodgers and asked him to steal leads and other proprietary information from Plaintiff, and for a confidential VBB log-in username and password.  *Id.* ¶¶ 29, 31. According to the Complaint, Defendants Joseph Holstein ("Holstein") and Marszalek, also worked with Caro and Rodgers to steal listings and other confidential information from VBB.  *See id.*  Sometime thereafter, Plaintiff allegedly confronted Rodgers about his conduct and he confessed.  *See id.* ¶ 37. Subsequently, VBB filed complaints with, and turned over evidence to, the SCPD about the Private Defendants' alleged crimes.  *Id.* ¶ 39.  The SCPD, however, failed to make any arrests, and Plaintiff's complaint was closed in November 2015. *Id.* ¶ 42.

## II.  PROCEDURAL HISTORY

As set forth above, VBB filed its Complaint on September 5, 2016.  *See* DE [1]. The Complaint seeks money damages and equitable relief for:  1) violations of the

Fourteenth Amendment of the U.S. Constitution made pursuant to 42 U.S.C. § 1983; 2) conspiracy claims made pursuant to 42 U.S.C. §§ 1985(3) and 1986; 3) breach of contract; 4) tortious interference with contract; 5) misappropriation; and 6) an injunction against Rodgers, Caro, and Bridge.  *See generally* Compl.  In response, on February 13th, 16th, and 17th, 2017, Caro, Bridge, and Arrow, as well as Marszalek and the County Defendants, respectively, moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss.  *See* DE [31, 34, 38].  On March 16, 2017, Judge Azrack referred the motions to this Court for Report and Recommendation.  *See* DE [41].  On April 26, 2017, the motions to dismiss were referred to this Court to conduct all proceedings and enter a final order on the motions in accordance with 28 U.S.C. § 636(c).  *See* DE [47].

## III. LEGAL STANDARD

### A. <u>Fed. R. Civ. P. 12(b)(6)</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at

1965).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  Notwithstanding, "threadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal.  *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint as an exhibit or incorporated . . . by reference; (3) matters of which judicial notice may be taken; and (4) documents upon whose terms and effect the complaint relies heavily, *i.e.,* documents that are "integral" to the complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the facts alleged in the complaint, and any document attached as an exhibit to the complaint or incorporated in it by reference.").

# IV. DISCUSSION

Applying the standards outlined above, and for the reasons set forth herein, the Court grants Defendants' respective motions to dismiss in their entirety with prejudice. Plaintiff asserts several federal causes of action made pursuant to 42 U.S.C. §§ 1983, 1985(3), and 1986 based upon alleged violations of its rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution. Initially, the Court considers the Private and County Defendants' argument that these claims are barred by the applicable statutes of limitations and, alternatively, fail to state a claim upon which relief can be granted. The Court then considers the remaining state law claims.

## A. Conversion to a Motion for Summary Judgment

As a preliminary matter, the Court considers whether the affidavits annexed to the County Defendants' motion and Plaintiff's opposition papers converts that motion to one for summary judgment. On a 12(b)(6) motion, "[i]f matters outside the pleadings are presented to the court, a court may convert the motion to dismiss into a summary judgment motion." *Vailette v. Lindsay*, No. 11-CV-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) ("When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (internal quotation marks and alterations omitted). Although

6

the court "must ordinarily give notice to the parties" before conversion, "a party 'is deemed to have notice that a motion may be converted ... if that party should reasonably have recognized the possibility that such a conversion would occur.' " *Almonte v. Pub. Storage Inc.*, No. 11 CIV. 1404, 2011 WL 3902997, at *1 (S.D.N.Y. Sept. 2, 2011) (quoting *Sira v. Morton,* 380 F.3d 57, 68 (2d Cir. 2004)); *see also In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985) ("The essential inquiry is whether [the party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

Whether to convert the motion is in the District Court's discretion. *See Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05 CIV. 217, 2008 WL 190310, at *3 (S.D.N.Y. Jan. 16, 2008) ("It is within the discretion of this Court to convert a motion filed under Rule 12(b)(6) into a motion seeking summary judgment when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a reasonable opportunity to present materials pertinent to the motion's disposition.") (internal quotation marks omitted); *Scope, Inc. v. Pataki*, 386 F. Supp. 2d 184, 190 (W.D.N.Y. 2005) ("The Court determines in its discretion, however, not to convert these motions on the pleadings to ones for summary judgment at this time."); *Staveley v. St. Charles Hosp.*, 173 F.R.D. 49, 51 (E.D.N.Y. 1997) ("In its discretion and upon notice to the parties, a court may consider materials outside the pleadings. If it does so, and notice is given to the parties, the motion for judgment on the pleadings is treated as one for summary judgment."). In

exercising this discretion, Courts "look[] to the substance of the motion," *Ansonia Tenants' Coal., Inc. v. Ansonia Assocs.*, 163 F.R.D. 468, 470 (S.D.N.Y. 1995), as "[t]he element that triggers the conversion . . . is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material." *Nat'l Cement Co. v. Mead Corp.*, 80 F.R.D. 703, 704–05 (S.D.N.Y. 1978) (citing 9 Wright & Miller, Federal Practice and Procedure, § 1366, at 676)).

Here, the Court declines to exercise its discretion to convert this motion into one for summary judgment. The County Defendants' and Plaintiff's extra-pleading material consists of two affidavits by Robert Creighton ("Creighton"), a non-party former Chief Investigator of the Suffolk County District Attorney's Office who initially contacted the District Attorney's Office on behalf of VBB, and an affidavit by Frank Shea ("Shea"), a non-party private investigator contacted by Creighton about VBB's claims. *See* Creighton Affidavit in Support, DE [39-2]; Creighton Affidavit in Opposition; DE [35],[2] Ex. B; Frank Shea Affidavit in Opposition, DE [35], Ex. A. Creighton's and Shea's affidavits have no impact on the Court's analysis however. *See, e.g.*, *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 334 (E.D.N.Y. 2009) (declining conversion where "there is nothing for the Court to consider, in terms of evidence from the defendants, if it were to convert the motion to dismiss into a summary judgment motion."). Moreover, the County Defendants neither include a Rule 56.1 statement nor advocate for summary judgment in their

---

[2] In response to the Creighton Affidavit in Support, submitted by the County Defendants, VBB submitted the Creighton Affidavit in Opposition, of which the latter clarifies and expands on information propounded in the former.

brief. *See* County Defendants' Memorandum of Law ("County Def.'s Mem. Law"), DE [38]. For these reasons, the Court declines to convert the County Defendants' motion to dismiss to a motion for summary judgment. Accordingly, the ignores the Creighton and Shea Affidavits, as well as facts in the County Defendants' motion papers and Plaintiff's Opposition Papers not set forth in the Complaint, in determining this motion. *See Patell Indus. Mach. Co. v. Toyoda Mach. U.S.A., Inc.*, No. 93-CV-1572, 1997 WL 10972, at *2 (N.D.N.Y. Jan. 9, 1997) ("The Court, however, declines to convert Defendant's motion to a motion for summary judgment, and therefore will not consider Plaintiff's affidavit in ruling upon the merits of Defendant's Rule 12(c) motion.").

### B. <u>Timeliness of VBB's Federal Law Claims</u>

Initially, the Private and County Defendants move to dismiss Plaintiff's various federal law claims on timeliness grounds. In response, VBB argues that its claims are timely as the applicable statutes of limitations are tolled by the doctrines of continuing harm and equitable estoppel.

### i. *VBB's 42 U.S.C. §§ 1983, 1985(3), and 1986 claims*

Plaintiff's Section 1983, 1985(3), and 1986 claims are untimely. While Section 1983 does not contain a statute of limitations provision, the Supreme Court has held that courts entertaining claims brought under 42 U.S.C § 1983 should borrow the state statute of limitations governing general personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 249, 109 S. Ct. 573, 582 (1989). New York State has a three-year statute of limitations governing such claims. *See* CPLR § 214(5). Accordingly, the Supreme Court has held that the statute of limitations for claims brought under

42 U.S.C. § 1983 in New York State is three years. *See Owens*, 488 U.S. at 249, 109 S. Ct. at 582; *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (finding N.Y. C.P.L.R. 214(5), which sets the statute of limitations for personal injury claims, supplies the limitations period for a civil rights claim brought under 42 U.S.C. § 1983 in New York). "[A] section 1983 cause of action accrues . . . when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002). The statute of limitations governing actions brought under 42 U.S.C. § 1985 is also three years. *See Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). A cause of action also accrues under Section 1985 "once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (internal quotation marks omitted). In contrast to Sections 1983 and 1985, a claim under Section 1986 must be commenced within one year after the cause of action has accrued. *See* 42 U.S.C. § 1986.

Although VBB fails to allege when it initially filed a complaint with the SCPD, the events that form the basis for its Sections 1983, 1985(3), and 1986 claims occurred between 2007 and 2008. *See* Compl. ¶¶ 35-41. Plaintiff does not dispute that it gained knowledge of the allegedly unlawful activity at this time. Accordingly, the three-year limitations period began no later than 2008, and ended in 2011. As a result, the Complaint's federal law claims, which were filed on September 5, 2016, over eight years later, are time-barred.

### ii. The Continuing Violation Doctrine

Instead, Plaintiff argues that its federal law claims are saved by the continuing violation doctrine. The Court disagrees. Pursuant to the continuing violation

doctrine, "[w]here a plaintiff can demonstrate an ongoing or continuing violation of his federally protected rights, the plaintiff is entitled to bring suit challenging all conduct that was part of the violation, even conduct that occurred outside the limitations period." *Cornwell*, 23 F.3d at 704. Generally, under the continuing-violation doctrine, where there is an "ongoing discriminatory policy or practice," the accrual time for the statute of limitations may be delayed until the last act in furtherance of the policy." *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). "[C]ourts of this circuit consistently have looked unfavorably on continuing violation arguments . . . and have applied the theory only under compelling circumstances." *Blankman v. Cnty. of Nassau*, 819 F. Supp. 198, 207 (E.D.N.Y. 1993). Compelling circumstances have been found "where the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness." *Ruane v. Cty. of Suffolk*, 923 F. Supp. 2d 454, 460 (E.D.N.Y. 2013) (internal quotations and citations omitted). The Second Circuit has held that "a continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Harris*, 186 F.3d at 250. Instead, to trigger the continuing violation doctrine, a plaintiff must also allege some non-time-barred acts taken in furtherance of a discriminatory policy. *See id.* Moreover, the Second Circuit has made clear that "[c]haracterizing defendants' separate wrongful acts as having been committed in

furtherance of a conspiracy or as a series of interlocking events does not postpone accrual of claims based on individual wrongful acts." *Singleton*, 632 F.2d at 192 (internal quotations omitted). "To permit [a plaintiff] to wait and toll the running of the statute simply by asserting that a series of separate wrongs were committed pursuant to a conspiracy would be to enable [plaintiff] to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims." *Id.*

Here, VBB's allegations are insufficient to establish a continuing violation. Plaintiff argues that the "SCPD committed a continuing wrong up until November 2015 and that therefore, the statute of limitations runs from that date." VBB's Combined Memorandum of Law in Opposition to the Defendants' Motion to Dismiss ("Pl.'s Opp.") at 10. Plaintiff also argues that it refrained from commencing a civil action against the Private Defendants on the "belief that [the Private Defendants] would be arrested and prosecuted." *Id.* VBB, however, does not dispute that it had knowledge of the requisite facts underlying its claims when it made its initial complaint to the SCPD sometime in 2007 or 2008. Further, Plaintiff fails to allege what constitutional wrongs were committed by the Private and County Defendants in the period between 2008 and September 2016, or identify any compelling circumstances that would warrant the application of the continuing violation doctrine. Finally, VBB's mistaken belief that the Private Defendants would be arrested does not constitute a continued wrongdoing; it is, instead, a continued effect of the time-barred allegedly unlawful acts. Accordingly, VBB has failed to demonstrate that tolling the statute of limitations under the continuing violation

doctrine is warranted. Moreover, the Court recognizes that the weight of authority in the Second Circuit appears to hold that the continuing-violation doctrine may not be applied to Section 1983 civil rights claims that do not involve allegations of discrimination. *See, e.g.*, *Koehl v. Greene*, No. 06-CV-0478, 2007 WL 2846905, at *8 (N.D.N.Y. Sept. 26, 2007) (collecting cases). Accordingly, even if the continuing violation doctrine might otherwise be applicable, it would not save Plaintiff's Section 1983 claims, which do not involve allegations of unlawful discrimination.

### iii. The Equitable Estoppel Doctrine

VBB also fails to demonstrate a basis for tolling the statute of limitations under the doctrine of equitable estoppel. "The doctrine of equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense . . . [such as] where a plaintiff is induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Good Luck Prod. Co. v. Crystal Cove Seafood Corp.*, 60 F. Supp. 3d 365, 373 (E.D.N.Y. 2014) (quoting *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks and citations omitted)). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 416 (E.D.N.Y. 2006) (internal quotation marks and citation omitted). "Typically, the doctrine is invoked in cases in which [a defendant] has made misrepresentations concerning the statute of limitations or lulled the plaintiff into

believing that it was not necessary for him to commence litigation." *Id.* (internal quotation marks and citation omitted).

VBB's equitable estoppel argument fails as the Complaint is devoid of any allegations of fraud, misrepresentation, or deception that prevented the timely commencement of the instant action. Plaintiff argues that it was "led by the SCPD to believe that its investigation was active and ongoing and that the wrongdoers would eventually be brought to justice, thereby inducing [P]laintiff to defer from commencing a civil action." *See* Pl.'s Opp. at 9. However, VBB fails to describe any statements or acts committed by the Private or County Defendants that affirmatively concealed any facts or prevented the timely commencement of a civil action. Instead, as set forth above, it is undisputed that, since 2008, VBB had knowledge of the requisite facts underlying its claims. Plaintiff, therefore, has failed to demonstrate that it was prevented in "some extraordinary way" from exercising its rights in a civil action. *See Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002). As a result, Plaintiff is unable to invoke the doctrine of equitable estoppel as a means of tolling the applicable statutes of limitations, and its Sections 1983, 1985, and 1986 claims are untimely. Accordingly, Defendants' motions to dismiss VBB's federal claims as time-barred are granted.

### C. <u>VBB's 42 U.S.C. § 1983 Claims</u>

Alternatively, VBB's Complaint also fails to plausibly state a cause of action pursuant to Section 1983. In the Complaint, Plaintiff asserts multiple causes of action under 42 U.S.C. § 1983 against the County Defendants for: (1) violations of

the Equal Protection Clause of the Fourteenth Amendment regarding its "class of one" claim; (2) violations of the Due Process Clause of the Fourteenth Amendment; and (3) municipal liability based on the SCPD's policy and practice of improperly investigating alleged crimes. *See* Compl. The Court considers each argument in turn.

### i. *42 U.S.C. § 1983 Generally*

42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate: "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law." *Hawkins v. Nassau Cty. Corr. Facility*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983). Further, "it is well-settled that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Jones v. Nassau County Sheriff Dep't*, 285 F. Supp. 2d 322, 325 (E.D.N.Y. 2003) (quoting *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

### ii. *Failure to Allege "Class of One" Equal Protection Violations*

Plaintiff has failed to adequately allege a "class of one" claim. The Equal Protection Clause of the Fourteenth Amendment guarantees "'[the] right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322, 100 S. Ct. 2671, 2691 (1980)). "The [Clause] requires that the government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001); *accord City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 105 S. Ct. 3249 (1985*); Disabled American Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992). Following the Supreme Court's decision in *Engquist v. Oregon Dep't of Agric*, 553 U.S. 591, 603, 128 S. Ct. 2146, 2154 (2008), to succeed on a "class of one" claim, a plaintiff must allege: (1) that it was treated differently from others similarly situated in all relevant respects; (2) that defendants had no rational basis for the differential treatment; and (3) that the differential treatment resulted from a non-discretionary state action. *Seymour's Boatyard, Inc. v. Town of Huntington*, No. 08-CV-3248, 2009 WL 1514610, at *7 (E.D.N.Y. June 1, 2009).

Initially, the plaintiff "must demonstrate that [he was] treated differently than someone who is prima facie identical in all relevant respects." *Mangino v. Inc. Vil. of Patchogue*, 739 F. Supp.2d 205, 255 (E.D.N.Y. 2010) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005)). This requires a showing that the level of similarity between the plaintiff and the person(s) with whom she compares herself is "extremely high"-so high (1) that "no rational person could regard the circumstances of the

plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) that "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Id.*

Plaintiff's "class of one claim" fails for two reasons. Initially, the Complaint fails to adequately allege the existence and differential treatment of any similarly situated individuals. *See Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ("[A] class-of-one claim requires a plaintiff to show an extremely high degree of similarity between [himself] and [his] comparators.") (internal citations omitted). Here, VBB alleges that Dormer's relationship to Caro "is the reason it was treated differently than other victims of similar crimes in Suffolk County." Compl. ¶ 68. Even assuming a relationship between Dormer and Caro existed, the Complaint, does not reference a person that was a "victim[] of similar crimes" or how he was "treated differently" by the SCPD. Accordingly, Plaintiff's claim fails as it is unable to demonstrate the existence of and differential treatment of similarly situated individuals.

Moreover, the SCPD's decision not to arrest the Private Defendants constitutes a discretionary state action. *See DePietro v. City of N.Y.*, No. 09–CV–932, 2010 WL 449096, at *10 (E.D.N.Y. Feb. 2, 2010) ("When officials act within their discretion, basing their decision on a variety of factors that could yield different results on a case by case basis, the rationale of *Engquist* precludes a class of one challenge."). The duty to investigate possible criminal acts involves a significant level of law enforcement

discretion. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760, 125 S. Ct. 2796, 2805 (2005) (observing that "[i]n each and every state there are longstanding statutes that, by their terms, seem to preclude nonenforcement by the police" but that, "for a number of reasons, including their legislative history, insufficient resources, and sheer physical impossibility," such statutes "clearly do not mean that a police officer may not lawfully decline to make an arrest") (alteration and internal quotation marks omitted); *Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010). Here, the decision to initiate and continue an investigation, such as the one involving VBB and the Private Defendants, inherently rests upon a variety of factors to be determined on a case-by-case basis. *See Heckler v. Chaney*, 470 U.S. 821, 831–32, 105 S. Ct. 1649, 1656, (1985) (finding that the courts are ill-equipped to deal with the many variables involved in the proper ordering of law enforcement priorities in light of finite resources). Therefore, to the extent that VBB is challenging the SCPD's investigation and subsequent decision not to make an arrest, the actions and decisions taken are discretionary, and not subject to a "class of one claim." Accordingly, Plaintiff has failed to state a cause of action for a violation of the Equal Protection Clause of the Fourteenth Amendment, and the motion to dismiss this claim is granted.

### iii. Failure to Allege Due Process Violations

Plaintiff has also failed to state a claim for a violation of the Due Process Clause under the Fourteenth Amendment. While the Complaint does not assert a separate cause of action for alleged Due Process violations, it does allege unspecified violations of the Due Process Clause. *See* Compl. ¶¶ 45, 65, 80, 102. The Supreme Court has explained that, with respect to a Due Process claim, "a benefit is not a

protected entitlement if government officials may grant or deny it in their discretion," *id.* at 756, 125 S. Ct. at 2804, and that a "well established tradition" of police discretion has long existed. *See id.* at 760, 125 S. Ct. at 2806. Accordingly, the Court has declared that "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its substantive manifestations." *Id.* at 768, 125 S. Ct. at 2810. Simply, there is "no constitutional right to an investigation by government officials." *Stone v. Dep't of Investigation of City of New York*, No. 91 CIV. 2471, 1992 WL 25202, at *2 (S.D.N.Y. Feb. 4, 1992) (citing *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir.1985)).

Applying these principles, VBB does not have a protected interest in the County Defendants' investigation or the arrest of the Private Defendants. As stated above, the duty to investigate possible criminal acts involves a significant level of law enforcement discretion. *See Castle Rock*, 545 U.S. at 760, 125 S. Ct. at 2805. That discretion precludes any "legitimate claim of entitlement" to a police investigation. *See id.* at 756, 125 S. Ct. at 2804 (explaining that a discretionary benefit is not a protected entitlement); *see also Roth*, 408 U.S. at 577, 92 S. Ct. at 2709. Accordingly, as VBB does not have "a legitimate claim of entitlement" to a police investigation, and as no procedural irregularities have been alleged, it has failed to adequately allege a violation of the Due Process Clause of the Fourteenth Amendment, and the County Defendants' motion to dismiss this cause of action is granted.

*iv. Municipal Liability Arising Under 42 U.S.C. § 1983*

Plaintiff's claim of municipal liability under 42 U.S.C. § 1983 is also untenable. A municipality may not be held liable under Section 1983 on a *respondeat superior* theory of liability. *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036 (1978); *see also Genovese v. Town of Southampton*, 921 F. Supp. 2d 8, 24 (E.D.N.Y. 2013) ("[A] municipal entity may only be held liable where the entity itself commits a wrong; a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.") (internal quotation omitted). To state a claim for municipal liability, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Torraco v. Port Authority of New York & New Jersey*, 615 F.3d 129, 140 (2d Cir. 2010) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see Norton v. Town of Islip*, 97 F. Supp. 3d 241, 264 (E.D.N.Y. 2015), *reconsideration denied*, 12 CV 4463, 2016 WL 264930 (E.D.N.Y. Jan. 21, 2016), *aff'd*, 16-490-CV, 2017 WL 440131 (2d Cir. Feb. 1, 2017) (citing *Monell*, 436 U.S. at 690-91, 98 S. Ct. at 2036; *Lamont v. City of New York*, 12-CV-2478, 2014 WL 4829328, at *7 (E.D.N.Y. Sept. 29, 2014)).

Moreover, though Section 1983 does not require application of a heightened pleading standard to allege municipal liability, a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1937 (alteration in original) (internal citations and quotation marks omitted); *see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S. Ct. 1160, 1163 (1993). Thus, Plaintiff cannot simply allege the existence of a policy and/or custom without putting forth

"facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos,* 847 F. Supp. 2d at 576 (citing *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir. 1993), *overruled on other grounds by Leatherman,* 507 U.S. at 164, 113 S. Ct. at 1163-64)). Simply asserting that the alleged violations could not have occurred unless supervisors and policy makers tolerated them is insufficient to demonstrate the existence of such a custom unless the assertion is clearly supported by an articulated factual context. *See Missel v. Cnty. of Monroe,* 351 F. App'x. 543, 545 (2d Cir. 2009); *Duncan v. City of New York,* 11-CV-3826, 2012 WL 1672929, at *3 (E.D.N.Y. May 14, 2012) (holding that "boilerplate statements" claiming that the city has a custom of making and tolerating false arrests and of using excessive force "are insufficient to state a claim of municipal liability under *Monell*"); *Bradley v. City of New York,* 08-CV-1106, 2009 WL 1703237, at *3 (E.D.N.Y. June 18, 2009) ("The Complaint's conclusory, boilerplate language – that the City 'fail[ed] to adequately discipline and supervise' employees and 'fail[ed] to promulgate and put into effect appropriate rules and regulations applicable to the duties and behavior' of its employees – is insufficient to raise an inference of the existence of a custom or policy, let alone that such a policy caused Plaintiff to be arrested without probable cause.") (internal citations omitted).

A policy or custom for purposes of municipal liability under Section 1983 need not be explicit however. *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (2d Cir. 1992). Rather, a policy or custom may be inferred from constitutional violations that are so "persistent and widespread" that they "practically have force of law." *Davis v.*

*City of New York*, 959 F. Supp. 2d 324, 338 (S.D.N.Y. 2013). Accordingly, "a single incident involving an employee below the policymaking level will not suffice to support an inference of municipal custom or policy." *Brewster v. Nassau County*, 349 F. Supp. 2d 540, 549 (E.D.N.Y. 2004) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995)).

A municipality may also be held liable where it demonstrates a "manifest failure to train, supervise or discipline [its] employees." *Mahan v. City of New York*, No. 00-CV-6645, 2005 WL 1677524, at *3 (E.D.N.Y. July 19, 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985)). In such cases, an inference of a municipal custom or policy may

> be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights.

*DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998); *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("We have held that municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy or ratification of unconstitutional conduct within the meaning of *Monell*."). However, "[o]nly where a failure . . . reflects a deliberate or conscious choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 1205 (1989); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 538 (S.D.N.Y. 2012) ("A municipality may be liable for the failure to supervise or discipline its

employees only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need.") (internal quotation omitted).

Applying these standards, VBB has failed to state a claim for municipal liability under Section 1983. As to municipal liability, Plaintiff alleges that the SCPD has adopted: (1) careless and reckless policies, customs, or practices, that include, among other violations, a policy for stalling and impeding criminal investigations; (2) a policy of refusing to remove conflicted police officers when required; (3) a policy of permitting its officers to protect individuals who commit crimes with whom they are connected in an effort to shield such individuals from prosecution; (4) a policy of permitting its officers to intentionally manipulate evidence and withhold documentation in an effort to protect individuals who commit crimes and with whom they are connected in an effort to shield such individuals from prosecution; and (6) a policy of failing to properly discipline its police officers for their wrongdoing, improper investigation techniques and other violations. Plaintiff, however, fails to state any facts that support the allegations that the SCPD has adopted and implemented any of the above-mentioned policies. *See Zahra v. Town of Southhold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[A]ssertion[s] . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference."). Instead, it appears that VBB attempts to impermissibly infer a policy from the alleged violation of its own civil rights.

*See Anderson v. City of New York*, 657 F. Supp. 1571, 1574 (S.D.N.Y. 1987) ("Plaintiff cannot infer a policy from the alleged violation of his own civil rights."). Therefore, at most, Plaintiff has identified a single alleged incident which is insufficient to state a claim for municipal liability. *See Tuttle*, 471 U.S. at 814, 105 S. Ct. at 2431 ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*."). Accordingly, the County Defendants' motion to dismiss Plaintiff's municipal liability claim is also granted.

### D. **VBB's 42 U.S.C. § 1985(3) Claims**

All Defendants also move to dismiss VBB's conspiracy claims pursuant to 42 U.S.C. § 1985(3) for failure to state a cause of action. To state a valid claim pursuant to Section 1985(3) a plaintiff must allege:

> (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or deprived of a right or privilege of a citizen.

*Turkmen v. Hasty*, 789 F.3d 218, 262 (2d Cir. 2015). To prevail on a claim under 42 U.S.C. § 1985(3), "the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)). VBB alleges that the Private and County Defendants' actions contained the "necessary 'invidiously discriminatory animus' necessary to support" a Section 1985(3) claim. The Complaint, however, fails to allege that Defendants acted

with any racial or class-based invidious discriminatory motivation. Accordingly, Plaintiff has failed to adequately state a Section 1985(3) claim and this claim is dismissed.

### E.  Plaintiff's 42 U.S.C. § 1986 Claims

As VBB has failed to adequately plead a violation of Section 1985, its Section 1986 claim is similarly invalid.  42 U.S.C. § 1986 imposes liability on an individual who has knowledge of discrimination prohibited under 42 U.S.C. § 1985. *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996). Accordingly, Section 1986 claim is contingent upon a tenable Section 1985 claim. *See Mian*, 7 F.3d at 1088 (finding that Section 1986 claims are contingent upon a valid section 1985 claim).  As a result, having found that VBB fails to state a claim under Section 1985, its Section 1986 claim must also be dismissed.

### F.  Qualified Immunity and the Individual County Defendants

Defendants further argue that Plaintiff's claims against Dormer and Gabrielle arising under Section 1983 should be dismissed pursuant to the doctrine of qualified immunity.  *See* County Defs.' Mem. at 20-21.  The doctrine of qualified immunity "protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (internal quotation omitted).  A police officer is entitled to qualified immunity if he establishes "either that his conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to

believe that his acts did not violate these clearly established rights." *Landy v. Irizarry*, 884 F. Supp. 788, 800 (S.D.N.Y. 1995) (quoting *Finnegan v. Fountain*, 915 F.2d 817, 818 (2d Cir. 1990)). In determining whether the doctrine of qualified immunity applies, courts consider: "(1) whether a plaintiff has shown facts making out a violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 561 (S.D.N.Y. 2015) (quoting *Gonzalez*, 728 F.3d at 154). An officer's actions are objectively reasonable "if officers of reasonable competence could disagree on the legality of the defendant's actions." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000) (internal quotation omitted). On a motion to dismiss, "[t]he initial question with respect to qualified immunity is whether, viewing the facts alleged in the light most favorable to the plaintiff, there was a constitutional violation." *Fierro v. City of New York*, 341 Fed. App'x. 696, 698 (2d Cir. 2009) (citing *Clubside, Inc. v. Valentin*, 468 F.3d 144, 152 (2d Cir. 2006)). Here, as VBB has failed to allege an underlying constitutional violation, an inquiry on the issue of qualified immunity is unnecessary. *See Pearson v. Callahan*, 555 U.S. 223, 243, 129 S. Ct. 808, 822 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 194, 121 S. Ct. 2151, 2152 (2001)).

## G. <u>Supplemental Jurisdiction Over State-Law Claims</u>

Having concluded that each of Plaintiff's federal claims against the moving Defendants must be dismissed, the Court declines to exercise supplemental

jurisdiction over any remaining state law causes of action. Supplemental jurisdiction over Plaintiff's state-law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction where, as here, all claims over which it had original jurisdiction have been dismissed. 28 U.S.C. § 1367(c). When such circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that, "the balance of factors to be considered," which includes "judicial economy, convenience, fairness and comity," "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003).

The County and Private Defendants' filed their Rule 12 motions to dismiss the Complaint in lieu of an Answer. *See* DE [31], [34], [38]. Thus, this litigation is still in its initial stages and no discovery has taken place. Accordingly, the Court grants the Private and County Defendants' motions to dismiss as to Plaintiff's federal claims and declines to exercise supplemental jurisdiction over VBB's state-law causes of action.

## H. Leave to File an Amended Complaint

While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district

court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Consistent with this principle, "a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)).

The Court finds that the deficiencies in VBB's pleadings are substantive and, due to the untimely and untenable nature of its claims, any subsequent amendments would be futile. Additionally, in its opposition VBB has not requested permission to file an amended complaint, nor has it "given any indication that it is in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt*, 12-CV-8061, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014). Accordingly, as the facts present in the pleadings "give[] no indication that a valid claim may be stated," the Court denies Plaintiff leave to amend. *See Flaherty v. All Hampton Limousine, Inc.*, 02-CV-4801, 2008 WL 2788171, at *8 (E.D.N.Y. July 16, 2008).

## V. CONCLUSION

Based on the foregoing, the Court hereby grants the motions to dismiss the Complaint for failure to state a claim in their entirety with prejudice.

Dated: Central Islip, New York
      September 15, 2017

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge